IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL EARL DAVIS, *Plaintiff,* v. WELLS FARGO U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE STRUCTURED ASSET INVESTMENT LOAN TRUST 2005-11, *Defendant.* | CIVIL ACTION NO. 16-06042 |

**PAPPERT, J.** May 4, 2017

**MEMORANDUM**

In 2015, Wells Fargo Bank[1] sought to foreclose on Michael Earl Davis's home. The Philadelphia County Court of Common Pleas ordered the foreclosure and awarded Wells Fargo $313,210 in November, 2016. Two weeks after the state court's decision, Davis filed his Complaint (which he amended the following day) in this case seeking to recover the amount awarded to Wells Fargo, along with punitive damages.

Wells Fargo moves to dismiss Davis's Amended Complaint on three grounds: First, Wells Fargo seeks dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), asserting that the claims are nothing more than an appeal of the common pleas court's decision and are barred by the *Rooker-Feldman* doctrine. Wells Fargo also moves to dismiss under Rule 12(b)(6) for failure to state a claim. Finally, Wells Fargo contends that *res judicata* bars the claims Davis raised or could have raised in previous actions. For the reasons that follow, Wells Fargo's motion is granted

---

[1] As the Defendant notes in its motion to dismiss: "By way of background only, Wells Fargo Bank, N.A., is the servicer for U.S. Bank with respect to Plaintiff's mortgage loan." (Def.'s Mem., at 1 n.1, ECF No. 7-1.) The Court thus refers only to Wells Fargo.

1

pursuant to Rule 12(b)(1). Because the Court lacks subject-matter jurisdiction, it dismisses the Amended Complaint without addressing Wells Fargo's 12(b)(6) or *res judicata* arguments.

**I.**

**A.**

On July 29, 2005, Davis executed a note and mortgage for the home located at 4015 Green Street in Philadelphia (the "Property") to BNC Mortgage, Inc. ("BNC") (Am. Compl. ¶ 6, ECF No. 2.) On January 5, 2008, Wells Fargo locked Davis out of the Property without having received an assignment of the note and mortgage from BNC. (*Id.* ¶ 7.) On January 25, 2008, Wells Fargo commenced its first foreclosure action against Davis in the Philadelphia County Court of Common Pleas (the "2008 foreclosure"). *See* (*id.* ¶ 8); (Defs.' Mem., at 5). After Wells Fargo initiated the 2008 foreclosure, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for BNC Mortgage, Inc., purported to assign the mortgage to Wells Fargo for the first time. (*Id.* ¶ 9.) Davis contends that the assignment was invalid. (*Id.*)

Davis is a Lieutenant Colonel in the United States Army, and was ordered to active duty while the 2008 foreclosure action was ongoing. (*Id.* ¶ 10.) He requested a stay of the 2008 foreclosure under the Servicemembers Civil Relief Act (SCRA). (*Id.* ¶ 11.) Though his request was not docketed, Wells Fargo moved to vacate a default judgment it had secured when it learned that Davis was an active duty servicemember. (*Id.* ¶¶ 11–12.) Davis remained on active duty until October 1, 2011. (*Id.* ¶ 13.)

On October 12, 2011, just after Davis returned from active duty, MERS again purported to assign the mortgage to Wells Fargo. (*Id.* ¶ 13.) Davis contends that this

assignment was also invalid because "it did not confirm the [first] assignment and signing authority." (*Id.*) Following this second purported assignment, Wells Fargo took out an insurance policy on the Property. *See* (*id.* ¶ 15). Davis remained locked out of the Property. *See* (*id.* ¶ 14).

On November 8, 2011 Wells Fargo first inspected the Property and discovered a roof leak that was damaging the ceiling, wall and floor in the master bedroom. (*Id.* ¶ 14.) The next day, Wells Fargo filed a claim with its insurer to cover the damage. (*Id.* ¶ 15.) Wells Fargo and its insurer settled the claim for $317, but Wells Fargo never repaired the roof leak or the damage to the master bedroom. (*Id.* ¶¶ 16–17.) As a result, the Property continued to deteriorate. *See* (*id.* ¶ 18).

Nearly a year after Wells Fargo discovered the leak, Davis received a violation notice from the City of Philadelphia stating that the Property was unsafe. (*Id.* ¶ 18.) He requested and received keys from Wells Fargo so that he could inspect the Property. (*Id.* ¶ 19.) Davis then discovered that the house's rear wall had partially collapsed and that mold had grown throughout the Property. (*Id.* ¶ 20.) He contends that the cost of rehabilitating the property exceeds $200,000. (*Id.* ¶ 21.)

## B.

These parties have litigated—and re-litigated—this and related matters in state and federal courts over the last five years. The previous cases also concerned a mortgage on the Property. Davis first sued U.S. Bank in federal court in 2012. *See* Complaint, *Davis v. U.S. Nat'l Bank Ass'n*, No. 12-cv-05943 (E.D. Pa. Oct. 18, 2012), ECF No. 1 (alleging SCRA violations and trespass). Judge Savage dismissed that case on January 24, 2013. *Id.* at ECF No. 23. Davis then sued Wells Fargo and its insurer

3

in 2014.  *See* Complaint, *Davis v. Wells Fargo U.S. Bank Nat'l Ass'n & Assurant, Inc.*, No. 14-cv-7014, ECF No. 1 (alleging trespass, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, insurance fraud, bad faith, loss of rental income and violations of the Bank Holding Company Act).  That case was originally assigned to Judge Slomsky but was reassigned first to Judge Kearney on January 26, 2015, (ECF No. 8), and then to this Court on March 9, 2015, (ECF No. 25).  The Court granted the Defendants' motion to dismiss in that case on June 8, 2015. (ECF No. 51.)  Davis appealed and the Third Circuit Court of Appeals affirmed in part, vacated in part and remanded.  *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016).  Following the appeal, the parties settled and the Court dismissed the case under Local Rule of Civil Procedure 41.1(b).  (ECF No. 69.)

The Property has been the subject of multiple foreclosure proceedings.  Davis removed the 2008 foreclosure action to federal court and subsequently filed counterclaims against Wells Fargo.  *See* Notice of Removal & Counterclaim, *U.S. Bank Nat'l Ass'n v. Davis*, No. 15-00494, ECF Nos. 1 & 12.  That case was remanded to state court.  *Id.*, ECF No. 18.  Wells Fargo again sought to foreclose on the Property on February 4, 2015 (the "2015 foreclosure").  *See* (Def.'s Mem., at 3–4, & Ex. F).  The Philadelphia County Court of Common Pleas ordered the foreclosure and awarded Wells Fargo $313,210 on November 3, 2016.  *See* (Am. Compl. ¶¶ 23–24).  Davis appealed that judgment to the Pennsylvania Superior Court.  *See* Notice of Appeal, *US*

Bank Nat'l Ass'n v. Davis*, No. 1502-00729, Phila. Cty. Ct. Common Pleas (Dec. 5, 2016).[2]

On November 17, 2016 (before appealing to the superior court), Davis filed this lawsuit seeking the $313,000 the common pleas court awarded Wells Fargo. He seeks to set aside the mortgage and contends that Wells Fargo was "unjustly enriched . . . with a money award from [the] foreclosure judgment." (Am. Compl., ¶¶ 5, 24, 27, 31(A)).

## II.

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). In a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a party may present a facial or factual attack on the court's jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). Here, Wells Fargo makes a facial attack on jurisdiction, *see* (Def.'s Mem., at 9), and the Court accordingly accepts as true the allegations in the Amended Complaint.

---

[2] The Superior Court dismissed the appeal as untimely on January 23, 2017. *See* Order Dismissing Appeal, *US Bank Nat'l Ass'n v. Davis*, No. 3813 EDA 2016 (Pa. Super. Ct. Jan 23, 2017) (per curiam).

5

## III.

### A.

Wells Fargo contends that Count I of the Amended Complaint seeks appellate review of a state-court decision, which is prohibited by the *Rooker-Feldman* doctrine. Davis argues that he is not seeking to recover for injuries caused by a state-court judgment but rather is seeking to recover for injuries rooted in the Defendants' misconduct.

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising subject-matter jurisdiction in a narrow range of cases already heard in state court. *See Exxon Mobil v. Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* Otherwise stated, a federal district court cannot exercise subject-matter jurisdiction over a case that is "functionally equivalent to an appeal from a state-court judgment." *Hersh v. CitiMortgage, Inc.*, 16 F. Supp. 3d 566, 570 (W.D. Pa. 2014) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals. v. Feldman*, 460 U.S. 462 (1983)). *Rooker-Feldman* is not, however, implicated every time a federal plaintiff seeks to litigate a matter already determined by a state court: if a federal plaintiff brings "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the doctrine does not apply. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 293).

Four elements must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the federal plaintiff complains of injuries caused by the state court's judgment; (3) the state court's judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court's judgments. *Id.* (*citing Exxon Mobil*, 544 U.S. at 284). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

**B.**

The first element of the *Great Western* test is satisfied here. Davis lost in state court. (Am. Compl., ¶ 24.) The "critical task" in evaluating the second element is to "identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Great Western*, 615 F.3d at 167 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (7th Cir. 2005)).

Davis argues that Wells Fargo, not the state-court judgment, caused his injury. He points to "the Plaintiff's conduct in illegally seizing Plaintiff's home, without possessing the mortgage, assignment of the mortgage, . . . then willfully destroying [the home] through neglect" for support. (Pl.'s Mem., at 12.) But the Amended Complaint is not aimed at Wells Fargo's independent behavior; it alleges unjust enrichment *from a foreclosure* judgment and seeks the money awarded to Wells Fargo as part of that judgment. (Am. Compl., ¶ 27.) Davis's injury of $313,000 would not exist *but-for the state-court judgment*.

Perhaps the most "useful guidepost" in determining the source of Davis's injury "is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* (quoting *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007)). The timing of Davis's injury shows it was caused by the state court's judgment: though the Amended Complaint is couched in terms of Wells Fargo's behavior, Davis's injury of $313,000 did not exist until the state court awarded that amount to Wells Fargo. Indeed, the Amended Complaint attributes the unjust enrichment injury to the state court's decision. *See* (Am. Compl., ¶ 27). The second *Great Western* element is therefore satisfied here.

The third *Great Western* element is plainly met as well. Neither party disputes that the state-court judgment was rendered before this action was filed. The state-court reached its decision on November 3, 2016. *See* (Def.'s Mem., at Ex. I, at 151, ECF No. 7-6). Davis filed his Complaint in this case on November 17, 2016. (ECF No. 1.)

Finally, the Court must determine whether Davis is seeking review of the state court's judgment. This inquiry is "closely related," though not identical, to the second *Great Western* element. *Great Western*, 615 F.3d at 168–69. Prohibited appellate review "consists of a review of the proceedings already conducted by the [state] tribunal to determine whether it reached its result in accordance with the law." *Id.* at 169 (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)). "It is important to distinguish such appellate review from those cases in which 'a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* (quoting *Exxon Mobil*, 554 U.S. at 293). If the federal court may reach a decision

without concerning itself with the *bona fides* of the state court decision, it is not conducting an appellate review prohibited by the *Rooker-Feldman* doctrine. *Id.* If the federal court's decision would negate the state court's judgment, however, *Rooker-Feldman* bars it from hearing the case. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (holding that *Rooker-Feldman* doctrine bars lower federal courts from hearing cases in which "the federal court must take an action that would negate the state court's judgment"); *see also Great Western*, 615 F.3d at 170 n.4 (noting that *In re Madera*'s framework is "consistent with *Exxon Mobil* and with the approach we adopt today"). The outcome of this analysis may turn on "very fine distinction[s]" between the state and federal cases such as "the nature of the relief requested." *In re Sabertooth, LLC*, 443 B.R. 671, 681–82 (E.D. Pa. 2011) (citing *In re Randall*, 358 B.R. 145, 155–56 (E.D. Pa. 2006)).

To obtain the relief he seeks, Davis needs the Court to effectively overrule the common pleas court's judgment. Davis lost the foreclosure case in state court and he now complains of injuries, specifically the $313,000 in damages, caused by the state court's decision. Although he couches his injury in terms of Wells Fargo's behavior, evaluating his claim for unjust enrichment *from a foreclosure judgment*, *see* (Am. Compl. ¶ 27), will require the Court to evaluate the *bona fides* of the state court's decision and determine whether it was, in fact, unjust.

In his response to Wells Fargo's motion, Davis contends that Wells Fargo should not be permitted to "enjoy the fruits of foreclosure" without paying for the value of the foreclosure. (Pl.'s Mem., at 13.) The *Rooker-Feldman* doctrine prohibits such a review:

a lower federal court may not review a state court's foreclosure decision and prohibit the victorious party from enforcing its judgment. *See In re Madera*, 586 F.3d at 232.

Davis correctly notes that the *Rooker-Feldman* doctrine does not bar litigating independent claims in federal court "even when that claim may deny a legal conclusion that a state court has reached." (Pl.'s Mem., at 12 (citing *Exxon Mobil*, 544 U.S. at 293)). But Davis's unjust enrichment claim is not *independent* from the state-court adjudication; it arises directly from that decision. Davis's Amended Complaint is the functional equivalent of an appeal from the common pleas court's decision. His request to effectively overturn that court's foreclosure judgment would not simply undermine a legal conclusion of the state-court decision, it would negate its judgment. This the Court cannot do. *See, e.g.*, *Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013) (per curiam) ("Gage cannot evade *Rooker-Feldman* by arguing on appeal that he was not injured by the foreclosure judgment, but rather by Wells Fargo's purportedly fraudulent actions. The complaint reveals the nature of Gage's claims against Wells Fargo: that the bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment . . . . These claims are in essence an attack on the state court judgment of foreclosure."); *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012) (per curiam) ("[Plaintiff's] allegations that various statutes and rights were violated because the defendants threatened, and followed through with, foreclosure when they had no right to do so is nothing more than an attack on the state court judgment); *Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010) (holding claim barred under the *Rooker-Feldman* doctrine where plaintiff sought damages stemming directly from a

state-court foreclosure action); *Jacobowitz v. M&T Mortg. Corp.*, 372 F. App'x 225, 227 (3d Cir. 2010) (per curiam) (agreeing that *Rooker-Feldman* barred TILA claims "as a favorable decision for the Jacobowitzes in the District Court would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage"); *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (finding that *Rooker-Feldman* barred rescission claim that would negate state court's foreclosure judgment).

Pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject-matter jurisdiction over this dispute.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.